IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 08-cv-01549-PAB

FRANCIS C. MARTINEZ,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____

**ORDER AFFIRMING THE ADMINISTRATIVE LAW JUDGE**
_____

This matter comes before the Court on plaintiff Francis Martinez's complaint [Docket No. 3], filed on July 23, 2008. Plaintiff, through counsel, seeks review of the final decision of defendant Michael J. Astrue (the "Commissioner") denying plaintiff's claim for disability insurance benefits under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33 and 1381-83c. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).

**I. BACKGROUND**

On August 23, 2005, Ms. Martinez filed for disability benefits and supplemental benefits under the Act. R. at 15. She has an alleged disability onset date of December 31, 2001. *See, e.g.*, R. at 63. After Ms. Martinez's claim was denied at the initial level, R. at 32-34, an Administrative Law Judge ("ALJ") conducted a hearing on August 28, 2007, at which plaintiff was not represented by an attorney but had the assistance of a friend, Teresa Bancroft, who also testified on plaintiff's behalf. R. at 233-46. The ALJ

did not receive the testimony of a Vocational Expert ("VE") at this hearing. On October 11, 2007, the ALJ issued a decision denying plaintiff's application for benefits. R. at 12-24.

Plaintiff requested that the Social Security Administration's Appeals Council review the ALJ decision. R. at 10. On June 7, 2008, the Appeals Council denied that request. R. at 4-7. Therefore, the ALJ's denial stands as the Commissioner's final decision on this matter. Plaintiff filed a timely appeal with this Court, making the Commissioner's final decision reviewable. *See* 42 U.S.C. § 405(g) (2006); *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

## II. ANALYSIS

### A. Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The district court may not reverse an ALJ simply because the Court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in his decision. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."

*Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The Court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070. Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(1)-(2). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006). The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

3

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)). A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health and Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability. However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience." *Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987). While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

### B. The ALJ Decision

In his October 11, 2007 decision, the ALJ reached step five in the sequential five-step analysis. At step one, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since December 31, 2001, her alleged onset date. R. at 17. At step two, the ALJ determined that plaintiff had the following severe impairments: borderline mental functioning and a learning disability. R. at 17. At step three, the ALJ concluded that Ms. Martinez did not have an impairment or combination of impairments that met or medically equaled the listed impairments in 20 C.F.R. § 404, Subpart P,

4

Appendix 1. R. at 18. In particular, the ALJ considered Social Security listing 12.05 and determined that Ms. Martinez did not meet the "Paragraph B" or "Paragraph C" criteria. R. at 18-19.

The ALJ then turned to the task of determining plaintiff's RFC and found that Ms. Martinez had "the residual functional capacity to perform the full range of unskilled work that does not require significant reading." R. at 19. In applying this RFC at step four, the ALJ found that the plaintiff was not able to perform her past relevant work. R. at 22. At step five, the ALJ concluded that, in light of plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that the plaintiff could perform. R. at 22-23. In determining the number of jobs, the ALJ cited to and interpreted the Social Security Administrations Medical-Vocational Guidelines and related materials. R. at 22-23. Based on his step-five findings, the ALJ concluded that Ms. Martinez had not been under a disability, as it is defined under the Act, from her alleged onset date of December 31, 2001 through October 11, 2007, the date the ALJ issued his opinion. R. at 23.

### C. Plaintiff's Objections to the ALJ's Decision

In her appeal, Ms. Martinez objects to the ALJ's finding of no disability on three grounds: (1) the ALJ erred by finding at step three that Ms. Martinez did not meet listing 12.05C; (2) the ALJ's RFC determination was not supported by substantial evidence; and (3) the ALJ erred by relying on Medical-Vocational Guidelines. I address each of these objections in turn below.

5

*1. Listing 12.05C*

The 12.00 series of listings in 20 C.F.R. § 404, Subpart P, Appendix 1 addresses "Mental Disorders." Listing 12.05 is the listing for "Mental Retardation." The general description of the 12.00 series explains that

> [t]he structure of the listing for mental retardation (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A through D). If [a claimant's] impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing.

20 C.F.R. § Pt. 404, Subpart P, Appendix 1, 12.00 (Mental Disorders).

The "introductory paragraph" referenced in the excerpt above states that "[m]ental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." Paragraph C of listing 12.05, the paragraph presently in controversy, describes an affliction with "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." Therefore, to satisfy listing 12.05C, a claimant must meet three criteria: (1) significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period (this criterion is based upon the introductory paragraph); (2) a valid verbal, performance, or full scale IQ of 60 through 70 (this criterion is based upon Paragraph C); and (3) a physical or other mental impairment imposing an additional and significant work-related limitation of

function (this criterion also is based upon Paragraph C). *See Lax v. Astrue*, 489 F.3d 1080, 1085 (10th Cir. 2007).

In discussing listing 12.05C, the ALJ stated only that "the 'Paragraph C' criteria of listing 12.05 are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." R. at 19. Ms. Martinez complains that "[t]he ALJ's 'bare conclusion is beyond meaningful judicial review' because it deprives the court of the ability to 'assess whether relevant evidence adequately supports the ALJ's conclusion . . . and whether he applied the correct standards to arrive at that conclusion.'" Pl.'s Opening Br. [Docket No. 12] at 10-11 (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996)). I disagree.

Ms. Martinez is correct that the ALJ did not elaborate on the three criteria for listing 12.05C presented above. However, the failure to make such specific findings is, at most, harmless error. The Tenth Circuit noted in *Clifton v. Chater* that an ALJ is "required to discuss the evidence and explain why he found that appellant was not disabled at step three." 79 F.3d 1007, 1009 (10th Cir. 1996). However, "[t]he ALJ's *Clifton* error would be harmless if findings he made elsewhere conclusively negated [plaintiff's] claim under Listing 12.05C." *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008). I find that such is the case here.

The ALJ's conclusion regarding listing 12.05C immediately follows the ALJ's in-depth discussion of listing 12.05D regarding whether Ms. Martinez experienced marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated

episodes of decompensation, each of extended duration.  R. at 18-19 (citing 20 C.F.R. § Pt. 404, Subpart P, Appendix 1, 12.05D).  The ALJ concluded that the evidence did not support a finding of marked restriction in any of the four categories.  These same conclusions support a finding that the ALJ also concluded that Ms. Martinez did not have significantly subaverage general intellectual functioning with deficits in adaptive functioning, the criterion from the introductory paragraph that applies both to Paragraph D and Paragraph C.  While this inference alone may not be sufficient to sustain the ALJ's ruling, additional discussions elsewhere buttress his conclusion that listing 12.05C was not met.

The ALJ noted that the record indicates that, while Ms. Martinez's capacity for learning has been diagnosed as limited with respect to her verbal skills, she has shown signs of normal functioning and adaptation.  For example, the ALJ found it significant that Ms. Martinez is capable of performing many typical day-to-day activities which include taking care of herself, her child, and her pets. R. at 20.  The ALJ also cited Ms. Bancroft's testimony that, with the proper practice, Ms. Martinez has shown signs of improving even her verbal skills.  R. at 20.  The ALJ also discussed Ms. Martinez's apparent capacity to learn new tasks, citing the fact that she graduated from high school (special education), acquired a certificate in daycare from a community college, and has been able to hold various jobs, albeit for limited time periods.  The ALJ also discussed the report of examining psychologist Brett Valette, noting that Dr. Valette opined that Ms. Martinez could expect little advancement verbally.  However, according to the ALJ, Dr. Valette "noted that the claimant received her highest scores in the Performance portion of the test, particularly in the areas of essential and nonessential

8

details, learning new information and applying it with speed, accuracy and sequencing." R. at 21. Based upon this statement, the ALJ concluded that "while [Ms. Martinez] does have some limitation, she is capable of learning new information and applying that knowledge to a given situation." R. at 21. Finally, the ALJ cited with approval the report of reviewing psychiatrist, Dr. Donald Glasco. R. at 193. In the portion of the report cited by the ALJ, Dr. Glasco concluded that Ms. Martinez did not meet any of the three criteria of listing 12.05C. *See* R. at 193. The ALJ reportedly gave "great weight" to the opinions of Drs. Valette and Glasco, a decision which plaintiff does not challenge. The ALJ, however, gave Ms. Martinez the benefit of the doubt and assigned greater limitations to Ms. Martinez than either of these doctors. R. at 21.

Therefore, based on the ALJ's discussions, the Court concludes that he properly considered the issues represented by the first criterion of listing 12.05C – whether the claimant has significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period – even though he did not make specific reference to it. Furthermore, the ALJ's findings elsewhere in his opinion conclusively negate plaintiff's claim under Listing 12.05C. *See Carpenter*, 537 F.3d at 1266.

Ms. Martinez also argues that the ALJ erred under the third criterion of listing 12.05C – the existence of a physical or other mental impairment imposing an additional and significant work-related limitation of function. She claims that her learning disability qualifies as an additional and significant impairment or, alternatively, that the ALJ's conclusion that she could not perform her past relevant work required a finding of the

9

existence of a physical or other mental impairment imposing an additional and significant work-related limitation of function.

With respect to the first argument, the Tenth Circuit has adopted the approach taken by the First and Eleventh Circuits that a "§ 12.05C limitation is significant if the claimant suffers from a severe physical or other mental impairment, as defined at step two of the disability analysis, *apart from the decreased intellectual function*." Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997) (emphasis added). Ms. Martinez fails to account for the last clause of this rule. As the plain language of listing 12.05C demonstrates, the limitation must be "*additional* and significant" and must result from "a physical or *other* mental impairment." 20 C.F.R. § Pt. 404, Subpart P, Appendix 1, 12.05C (emphasis added). In the present case, the ALJ's discussion of Ms. Martinez's borderline intellectual functioning and her learning disability indicate that they are interconnected. In other words, the learning disability in not additional, does not differ in a significant way from her borderline intellectual functioning, and, thus, is not "apart from the decreased intellectual function" as required by Hinkle.

Ms. Martinez's second argument regarding listing 12.05C's third criterion relies on a footnote in Hinkle which states: "Needless to say, a claimant's inability to perform his past relevant work would meet the [third criterion] of § 12.05C." 132 F.3d 1349, 1352 n.4 (10th Cir. 1997). Here, the ALJ found that Ms. Martinez is unable to perform her past relevant work due to her mental limitations as they manifest themselves in her difficulty with reading and writing. R. at 22. I disagree with plaintiff that Hinkle demands a finding that she has met the third criterion. Not only is the footnote language from

*Hinkle* dictum, but the case itself is factually distinguishable from the present one. In *Hinkle*, the claimant alleged that a physical impairment caused an additional and significant work-related limitation of function. Ms. Martinez alleges that mental, rather than physical, limitations provide the basis for meeting the third criterion of listing 12.05C. However, as discussed above, Ms. Martinez's mental impairments are not "apart from [her] decreased intellectual function." *See Hinkle*, 132 F.3d at 1352. While the court in *Hinkle* had no occasion to address situations like the one presented here, I believe that the Tenth Circuit would require that, in order to satisfy the third criterion of listing 12.05C, a claimant must suffer from a severe physical or other mental impairment *apart* from the decreased intellectual function. Therefore, the aside in the footnote in *Hinkle* – that "a claimant's inability to perform his past relevant work would meet the [third criterion] of § 12.05C" – does not impact the present case.

Therefore, the ALJ did not err by concluding that Ms. Martinez did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Furthermore, to the extent that the ALJ failed to specifically address the criteria of listing 12.05C, that error was harmless. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 733-34 (10th Cir. 2005) ("[H]armless error analysis nevertheless may be appropriate to supply a missing dispositive finding where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." (internal quotation marks and omission marks omitted)).

### *2. Whether Substantial Evidence Supports the RFC*

Ms. Martinez appears to challenge the ALJ's RFC determination on a number of grounds, each of which I address in turn. First, Ms. Martinez states that "it was improper for the ALJ to 'assume that failure to meet or equal a listed mental impairment equates with capacity to do at least unskilled work.'" Pl.'s Opening Br. at 12 (citing Social Security Ruling 85-15; Social Security Ruling 85-16). However, there is no indication that this is what the ALJ did. Instead, the ALJ conducted a thorough review of the evidence and arrived at a conclusion regarding the severity of Ms. Martinez's mental limitations, *see* R. at 19-22, which is, after all, his responsibility, *see* 20 C.F.R. § 404.1527(e)(2) ("Although we consider opinions from medical sources on issues such as . . . your residual functional capacity (see §§ 404.1545 and 404.1546) . . . the final responsibility for deciding these issues is reserved to the Commissioner."). Ms. Martinez takes issue with the ALJ's determination regarding the severity of her impairment. However, I find that substantial evidence – namely, Dr. Valette's and Dr. Glasco's appraisals of plaintiff and plaintiff's own reports about her ability to function at home and in a work environment – support the ALJ's conclusion and, as a result, I may not overturn it.

Plaintiff argues that the ALJ improperly disregarded the purported effects of stress on her ability to respond appropriately to supervisors and co-workers and to adapt to changes in the work setting. Pl.'s Opening Br. at 14-15. However, as the ALJ noted, there is no evidence of such limitations in the record. The only report is by Ms. Martinez herself, alleging that she gets angry and frustrated when she is unable to do certain things or when people do not understand her. R. at 87, 241. The ALJ noted

that "[t]emper and frustration are not recognizable impairments that preclude an individual from working." R. at 21. Again, the question is whether the ALJ's appraisal is supported by substantial evidence. I find that there is substantial evidence supporting the ALJ's conclusion that Ms. Martinez's purported limitations regarding stress and interacting with others do not impair her ability to work.

### 3. The ALJ's Reliance on the Medical-Vocational Guidelines

Ms. Martinez's final basis for challenging the ALJ's disability determination rests on the ALJ's reference to the Social Security Administration's Medical-Vocational Guidelines, often referred to as the "grids." Ms. Martinez argues that, because she has nonexertional impairments – i.e., mental impairments – any reliance on the grids was inappropriate. *See* Pl.'s Opening Br. at 15. The Tenth Circuit in *Trimiar v. Sullivan* explained that "where nonexertional impairments are also present, the grids alone cannot be used to determine the claimant's ability to perform alternative work." 966 F.2d 1326, 1333 (10th Cir. 1992). However, an ALJ may still use the grids as a framework from which to analyze the availability of significant numbers of jobs in the national economy. *Trimiar*, 966 F.2d at 1333. That being said, "[t]he mere presence of a nonexertional impairment does not preclude reliance on the grids." *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993). The court in *Thompson* summarized the issue as follows:

> an ALJ may not rely conclusively on the grids unless he finds (1) that the claimant has no significant nonexertional impairment, (2) that the claimant can do the full range of work at some RFC level on a daily basis, and (3) that the claimant can perform most of the jobs in that RFC level.

*Thompson*, 987 F.2d at 1488.

In the present case, rather than relying on the grids conclusively, the ALJ noted that the existence of nonexertional limitations requires that the grids be used as a framework only. R. at 22. The ALJ then noted that Ms. Martinez had no exertional limitations and that her nonexertional limitation, her mental impairment, "although severe, does not preclude unskilled work as the claimant's ability to understand, remember and carry out instructions, respond appropriately to supervision, coworkers and usual work situations, and deal with changes in a routine work setting are not significantly impacted." R. at 22. According to the ALJ, the only significant, work-related manifestation of Ms. Martinez's mental impairment is her illiteracy. R. at 23. The ALJ then reviewed the grids and noted that "[t]he medical-vocational rules indicate that, even if the claimant were limited to sedentary work, illiteracy would not be a significant factor until age 45." R. at 23. Because he determined that Ms. Martinez is physically capable of performing all unskilled jobs in the national economy, and perhaps some skilled and semi-skilled ones, the ALJ concluded that any erosion based on her reading and writing limitations would still leave a significant number of jobs in the national economy which Ms. Martinez would be capable of performing. I see no error in this conclusion.

## III. CONCLUSION

Therefore, for the reasons stated above, the Court concludes that the Commissioner's finding that plaintiff is not disabled under the Act is based upon substantial evidence and represents a correct application of the law. As a result, the Commissioner's decision is AFFIRMED.

14

DATED March 17, 2010.

            BY THE COURT:

            s/Philip A. Brimmer
            PHILIP A. BRIMMER
            United States District Judge